IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 14-01951

JOSE L. LUGO PARRILLA;                          CHAPTER 13
ANGELA RODRIGUEZ LOPEZ

       Debtors

OPINION AND ORDER

This case is before the court upon the Chapter 13 Trustee's (hereinafter referred to as the "Trustee") *Opposition to Application for Compensation* (Docket No. 47) arguing that the compensation for the Debtors' counsel should be limited to the flat fee of $3,000 pursuant to P.R. LBR 2016-1(f) because the services provided by counsel are within the services expected to be provided under the flat fee pursuant to P.R. LBR 2016-1(f)(2); or, in the alternative, that the compensation be reduced to the amount of $3,823.50. The Trustee objects to certain entries due to the following: (1) the entries relate to charges for clerical or secretarial tasks which are not compensable because they are considered as part of applicant's overhead expenses; and (2) some of the entries involve services of clerical or secretarial nature that are being charged at paralegal rate. The Law Firm (hereinafter referred to as the "Applicant" or "Movant") that represents the Debtors in this case filed its *Reply to "Trustee's Opposition to Application for Compensation"* (Docket No. 62) alleging as follows: (i) the legal services rendered in excess of the flat fee were for the benefit of the Debtors and should be compensated in conformity with 11 U.S.C. §330, the lodestar analysis and the text of P.R. LBR 2016-1(a)(4)(C); (ii) the Trustee's position is that regardless of the amount of hours dedicated to the pre-confirmation stage of a Chapter 13 case, if the services rendered are included in the list of responsibilities enumerated in P.R. LBR 2016-1(f)(2), then the fees requested must be limited to the $3,000 flat fee; (iii) the services rendered by the paralegal personnel were performed for the direct benefit of the

-1-

Debtors and thus, are compensable; (iv) the work performed by the attorneys is to be compensated at the attorney hourly rate; (v) the Trustee's opposition objected with some specificity the amount of $969. No objection has been filed for an amount in excess of $969. In the alternative, the Movant requests that the court approve the payment of the non-objected portion of the application which totals $3,823.50; (vi) there has been no lumping, duplication of services, or services vaguely described; and (vii) the Debtors were fully informed of and agreed from the outset of the case to the Applicant's compensation and procedure and terms. For the reasons set forth below, the application is granted in part and denied in part.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (B). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Facts and Procedural Background

The Debtors filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on March 14, 2014. The Debtors stated in the Disclosure of Compensation of Attorney for Debtors that the Applicant has agreed to accept for legal services the amount of $3,000, of which $200 were received prior to the filing of the statement, and that the balance due is in the amount of $2,800. In line items #6 and #7, which detail the legal services which the attorney has agreed to render as part of the bankruptcy case, the Movant discloses as follows:

> "In return for the above disclosed fee, I have agreed to render legal services for all aspects of the bankruptcy case, including:
>
> (a) Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
> (b) Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
> (c) Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
> (d) [Other provisions as needed]
>
> The fee agreement between [Almeida & Davila, PSC -Law Firm] and the debtor(s) provides that a flat fee of $3,000 is accumulated in services provided at the regular hourly rates of $200.00 for services performed by Enrique M. Almeida

-2-

and Zelma Dávila Carrasquillo. Matters attended by paralegal staff will be charged at the rate of $85 per hour, and services of in-house accountants will be charged at the rate of $100 per hour. Services of associate attorneys will be charged at the rate of $175 per hour. Expenses will be charged at their price/cost. Any work in excess of the flat fee agreed to will be billed through an application for compensation to be filed with the Court for its approval. This disclosure should be construed in harmony with 11 U.S.C. sec. 330(a)(4)(B), rules, and all applicable orders.

By agreement with the debtor(s), the above disclosed-fee does not include the following service: This agreement does not contemplate any work in local state courts, administrative courts, or any other forum other than the Bankruptcy Court. Adversary proceedings and appeals are also outside the scope of this agreement with the debtor(s)."

On March 14, 2014, the Debtors filed their proposed Chapter 13 plan of reorganization (Docket No. 2).  The 341 meeting was held and closed on April 16, 2014 (Docket Nos. 6 & 17). The Trustee's report of action taken at the meeting of creditors listed the following as the basis for the Trustee's objection to confirmation: (i) Debtors have to correct their postal address in the voluntary petition; (ii) joint Debtor has to clarify her interest over the inheritance property because it does not match the Trustee's liquidation value analysis. The mortgage payoff balance must be provided in order to review the final liquidation value; (iii) pending to submit insurance quote to Reliable's collateral; (iv) joint Debtor does not receive Christmas bonus; (v) joint Debtor's income of 2nd half of January 2014 is missing; and (vi) Debtor's income was not submitted (6 months & 60 days) (Docket No. 17).

On May 5, 2014, the Trustee filed a *Motion to Dismiss* pursuant to 11 U.S.C. §§521 and 1325 (Docket No. 18) premised upon the following: (i) amended voluntary petition to correct Debtors' postal address has not been filed; (ii) amended Schedule B to clarify joint Debtor's interest over the inheritance property, given that it does not coincide with Trustee's liquidation value analysis has not been filed. The payoff balance pertaining to this property's mortgage has not been submitted; (iii) the following documents have not been submitted: (a) insurance quote

-3-

to Reliable's collateral; (b) joint Debtor's income for the second half of January; and (c) Debtor's income of six months and sixty days prior to the filing of this case; and (iv) no extension of time or justification for failing to comply has been filed (Docket No. 18). The grounds upon which the motion to dismiss is based mirror the ones in the Trustee's 341 minutes. On May 8, 2014, the Trustee filed an unfavorable *Report on Confirmation* because the same failed the liquidation value test pursuant to 11 U.S.C. §1325(a)(4). The statements in the Trustee's unfavorable report on confirmation are the same as in the Trustee's motion to dismiss (Docket No. 21).

On May 9, 2014, a confirmation hearing was held in which the Chapter 13 plan was not confirmed and the confirmation hearing was continued to August 27, 2014 (Docket No. 22). On May 16, 2014, the Trustee filed a second unfavorable *Report on Confirmation* which is based upon the same reasons as the first report on confirmation, in addition to lack of feasibility pursuant to 11 U.S.C. §1325(a)(6) since the Debtors now owed $300 in plan payments corresponding to the month of May (Docket No. 23). On June 6, 2014, the Trustee filed its third unfavorable *Report on Confirmation* based upon the same reasons as the first unfavorable *Report on Confirmation* (Docket No. 24).

On June 6, 2014, the Trustee filed a *Motion requesting entry of Order of Dismissal* for the reasons stated in the *Motion to Dismiss* (Docket No. 18) because more than thirty (30) days had elapsed and the Debtors had failed to file a reply to said motion (Docket No. 25). On June 6, 2014, the Debtors filed a *Motion to Inform Amendment to Schedule B and Certificate of Service* to clarify the Debtor's interest over the inheritance property (Docket No. 27). The amendment to Schedule B consisted in clarifying that the mortgage debt is in the amount of $9,536 and the estimated liquidation value is $11,517.38. The current value of the joint Debtor's interest in the property was amended to $14,745.70. On said date, the Debtors also filed a *Motion to Inform*

*Amendment to Schedule C and Certificate of Service* to amend exemption under 11 U.S.C. §522(d)(1) (Docket No. 28). The amendment to Schedule C consisted in providing the same updated information pertaining to the joint Debtor's inheritance interest over a real property. On the same date, the Debtors filed their *Response to Trustee's Unfavorable Recommendation* stating that they have fully complied with all of the Trustee's requests, since they filed an amended voluntary petition, amended Schedule B and amended Schedule C. They have also uploaded the following documents via the Trustee Electronic Document Filing Application (TEDFA) system: (i) quote; (ii) payoff balance of inheritance; (iii) the liquidation value of inheritance; and (iv) the joint Debtor's income (Docket No. 29). Also on June 6, 2014, the Debtors filed their *Opposition to Trustee's Motion to Dismiss* stating that on this date the Debtors had filed the amendments and submitted the documents as requested by the Trustee (Docket No. 30).

On June 16, 2014, the Debtors filed a second *Motion submitting Amended Voluntary Petition, Notice and Certificate of Service* to correct the Debtors' postal address (Docket No. 34). On June 30, 2014, the Debtors filed their *Response to Trustee's Unfavorable Recommendation* stating that they have fully complied with all of the Trustee's requests and thus, the case is ready for confirmation. In this motion, the Debtors state that they have submitted the following documents via the TEDFA system: (i) evidence of Debtor's income from December 2013 to March 2014; and (ii) evidence of joint Debtor's income for the second half of January 2014 (Docket No. 36).

On July 1, 2014, the Movant filed its *Application for Compensation of Attorney for Debtor* requesting the amount of $4,792.50 for services rendered of which $200 was paid by Debtors pre-petition (Docket No. 37). On July 22, 2014, the Trustee filed a *Motion for Extension of Time to state Position over Counsel's Application for Compensation Dkt. 37* (Docket No. 38).

The same was granted on July 28, 2014 (Docket No. 41).  On July 23, 2014, the Trustee filed a *Notice of Withdrawal Motion to Dismiss Docket (18)* (Docket No. 39). On July 23, 2014, the Trustee filed its fourth unfavorable *Report on Confirmation* based upon the pending application for compensation and his motion requesting an extension of time to file his position regarding the same (Docket No. 40).  On August 5, 2014, the Trustee filed a second *Motion for Extension of Time to state Position over Counsel's Application for Compensation Dkt. 37* (Docket No. 45). The same was granted on August 6, 2014 (Docket No. 46).

On August 6, 2014, the Trustee filed his *Opposition to Application for Compensation* arguing the following: (i) the compensation for the Debtors' counsel should be limited to the flat fee of $3,000 pursuant to P.R. LBR 2016-1(f) because the services provided by counsel are within the services expected to be provided under the flat fee pursuant to P.R. LBR 2016-1(f)(2); (ii) the matters that have been raised regarding the confirmation of the plan are within the services covered by the flat fee such as: (a) providing certain paystubs; (b) amending the joint debtor's inheritance interest over certain real property in Schedule B to disclose liquidation expenses; (c) amending the voluntary petition to correct the Debtors' postal address; (d) addressing a Trustee's report on confirmation; (e) reviewing proofs of claims #s 1-5 up until the plan confirmation date; (f) "receiving and reviewing the certificate of service" of orders, notices, and motions; (g) "receiving and reviewing Notice of Appearances;" and (h) preparation of letters to Debtors on pending matters and to inform the Debtors of Trustee's motion to dismiss and hearing dates. In the alternative, The Trustee argues that compensation should be reduced to the amount of $3,823.50 as per his objection to certain entries due to the following: (i) some of the objected entries relate to charges for clerical or secretarial tasks which are considered part of the Applicant's overhead expenses and thus, not compensable. See In re Bergae, 2014 WL 1419586 (Bnakr. C.D. Ill. 2014), In re Brennan, 2103 WL 4046447 (Bankr. C.D. Ill. 2013), In re CF & I

Fabricators of Utah, Inc., 131 B.R. 474, 489 (Bankr. D. Utah 1991); (ii) some of the entries involve services of clerical or secretarial in nature that are being charged at paralegal rate for such tasks as "filing and organizing file" and "uploading documents" to the Trustee. See In re Bergae citing In re CF & I Fabricators of Utah, Inc. ("If the services provided by the paraprofessional represent a shift of tasks ordinarily performed by a lawyer or other professional, and the service is reasonable and necessary, the service is compensable"); (iii) in In re Bergae, the Court discussed the guidelines to determine whether the paralegal's services are compensable. The court determined that: "[t]o determine whether a paraprofessional's work is compensable legal work, a court should 'look at the kind of services that are traditionally charged to overhead, the amount of discretion allowed to the paraprofessional, the experience or education required to accomplish the assignment, the responsibility delegated to the paraprofessional and the amount of supervision retained by the professional" citing In re CF & I Fabricators of Utah, Inc., 131 B.R. at 489-90). Thus, the Applicant must demonstrate the experience and qualifications of the paraprofessionals that are the subject of the paralegal services included in the application; (iv) the Trustee submits a detail of the various entries that are objected in the eventuality the court does not limit the compensation to the $3,000 flat fee, thus limiting the compensation to $3,823.50; and (v) the court should order Debtors' counsel to disclose whether the person on whose behalf the Applicant is employed has had the opportunity to review the application and whether that person has approved the requested amount as required by the United States Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses (Docket No. 47).

On August 8, 2014, the Court ordered the Debtors to reply to the Trustee's *Opposition to Application for Compensation* within fourteen (14) days (Docket No. 48). On August 22, 2014, the Movant filed a *Motion for Extension of Time to File Reply to 'Trustee's Opposition to*

*Application for Compensation'* (Docket No. 52).  On August 26, 2014, the Trustee filed a *Motion for Continuance of Confirmation Hearing* because the issue of the application for compensation for services rendered pre-confirmation must be decided before the confirmation of the plan since it affects directly the sufficiency of the plan and the distribution to the general unsecured creditors. Moreover, the binding effect of a confirmed plan, and the finality of plan confirmation orders suggests that this issue should be litigated before plan confirmation. (Docket No. 54).  On August 27, 2014, the Trustee filed its fifth unfavorable *Report on Confirmation* based upon the pending application for compensation issue in which the Applicant filed a motion for an extension to file reply to the *Trustee's Opposition to Application for Compensation* (Docket No. 55).

On August 27, 2014, the confirmation hearing was held in which the plan was confirmed. The court ordered as follows: "Attorney's fee $3,000.00 without prejudice to a final determination re the application for compensation (#37) and trustee's opposition (#45, 47). Court states that it will not compensate administrative services at attorney's hourly rate. Debtors' counsel granted 14 days to reply to trustee's opposition. If no reply is timely filed, the fees will stand at $3,000.00. No fees will be awarded for time taken to litigate fee issue." (Docket No. 56).

On September 10, 2014, the Movant filed its *Reply to 'Trustee's Opposition to Application for Compensation'* arguing as follows: (i) the legal services rendered in excess of the flat fee were for the benefit of the Debtors and should be compensated in conformity with 11 U.S.C. §330, the lodestar analysis and the text of P.R. LBR 2016-1(a)(4)(C); (ii) attorneys may request fees in excess of the flat fee by filing an itemized fee application. This policy does not discourage the request for larger fee awards in cases which pose a greater difficulty and expenditure of time by the debtor's attorney. See In re Burton, 278 B.R. 645, 650 (Bankr. M.D. Ga. 2001). Likewise, cases of less than average difficulty do not warrant an award of fees in the

amount of the flat fee. Citing In re Burton, 278 B.R. at 650; (iii) the Trustee's position is that regardless of the amount of hours dedicated to the pre-confirmation stage of a Chapter 13 case, if the services rendered are included in the list of responsibilities enumerated in P.R. LBR 2016-1(f)(2), then the fees requested must be limited to the $3,000 flat fee; (iv) the services rendered by the paralegal personnel were performed for the direct benefit of the Debtors and thus, are compensable; (v) "[t]he Court may consider to allow compensation for those tasks performed by support or clerical personnel which have been shown to be of direct benefit to the client billed for it." In re C.P. Del Caribe, Inc., 143 B.R. 11 (Bankr. D.P.R. 1992); (vi) "[e]ven the tasks specifically mentioned by Trustee such as 'filing and organizing file' and 'uploading documents to Trustee' can be allotted to Debtors in the instant case, because it was their file and no other that was been organized and the documents been uploaded were those required for the confirmation of their case;" (vii) "Applicant respectfully understands that this direct benefit to the client billed for it criterion is the one that should prevail in the analysis developed by this Honorable Court rather than the distinction based on the nature of the task (clerical/secretarial or paraprofessional) as proposed by the Trustee. The direct benefit of the debtor is more precise, efficient and leads to a more equitable result, because, for example the upload by the Applicant's personnel of a comparable or of payment advices benefits debtors in contributing to clear the path towards confirmation of their case;" (viii) "…the paralegal duties were billed separately, with a description of the task performed, by the hour for a fixed rate of $85.00 as detailed in the Disclosure of Compensation of Attorney for Debtor(s);" (ix) "[t]he reason why the Court disallowed the part of the application concerning the clerical services in In re C.P. Del Caribe, Inc., *supra*, was that, due to the failure to provide a description of the services provided by the clerical or support staff, the Court should not ascertain the reasonableness of the fees requested. Given the fact that such description of the services provided by the clerical or support staff in the

instant case is present in the application and that the alleged clerical tasks for which compensation is requested were of the kind that are for the direct benefit of Debtors in this case, they are compensable;" (x) "[c]iting the 2004 ABA Model Guidelines for the Utilization of Paralegal Services, the delegation of tasks to paralegals is proper only if the lawyer maintains a direct relationship with his client, as well as properly supervises such delegation. To discharge these obligations Counsel at the Applicant law firm sometimes decides not to delegate some direct contact, including particular correspondence with the client. Moreover, other times it is more efficient for the attorney working on an issue in a case to prepare a client communication, instead of instructing the paralegal and later supervising the performance of the work;" (xi)  the Trustee's opposition objected with some specificity the amount of $969. No objection has been filed for an amount in excess of $969. In the alternative, the Applicant requests that the court approve the payment of the non-objected portion of the application which totals $3,823.50; (xii) there has been no lumping, duplication of services, or services vaguely described; and (xiii) the Debtors were fully informed of and agreed from the outset of the case to the Applicant's compensation and procedure and terms. The *Disclosure of Compensation of Attorney for Debtor(s)* was approved and signed by the debtor. The Debtors had the opportunity to review the application and approved of the requested amount. The Debtor received a copy of the Application, reviewed it and expressed that he had no objection to the charges contained therein (Docket No. 62).

<u>Issues</u>

The first issue before the court is whether the Applicant should be limited to the flat fee of $3,000 pursuant to P.R. LBR 2016-1(f) because the services provided are within the services expected to be provided under the flat fee pursuant to P.R. LBR 2016-1(f)(2).  The second issue depends on the determination of the first. The Trustee argues, in the alternative, that

compensation should be reduced to the amount of $3,823.50 as per objection to certain entries mainly due to the following: (i) the objected entries relate to charges for clerical or secretarial tasks which are being charged at the paralegal rate and thus, are not compensable; and (ii) some entries involve services that are being charged at the attorney rate, but are more appropriate at the paralegal rate; (iii) lumping of services; (iv) vague description of services provided; and (v) excessive and duplicative entries.

Applicable Law and Analysis

*Compensation in Chapter 13 Case*

Allowance of attorneys' fees in Chapter 13 cases based on the traditional bankruptcy methodology of applications for compensation under the "Loadstar Method" are impractical and burdensome in any district with a high volume of Chapter 13 cases. In Puerto Rico, approximately 60% of the cases filed are Chapter 13 cases. Therefore, the bankruptcy judges in Puerto Rico would face a difficult challenge if many chapter 13 fee applications are to be reviewed under the loadstar calculation. Notwithstanding, the challenge must be met as it is inherent to our responsibility as bankruptcy judges. See Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §294.1, at ¶[27], Sec. Rev. June 17, 2004, www.Ch13online.com.

Section 329(a)[1] of the Bankruptcy Code and Fed. R. Bankr. P. 2016(b)[2] mandate the debtor's attorneys to file complete and accurate disclosures of their fee agreements in every case.

---

[1] Section 329(a) provides: [a]ny attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. §329(a).

[2] Fed. R. Bankr. P. 2016(b) provides: "[e]very attorney for a debtor, whether or not the attorney applies for compensation shall file and transmit to the United States Trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by §329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed." Fed. R. Bankr. P. 2016(b).

11 U.S.C. §329(a); Fed. R. Bankr. P. 2016(b). Debtor's attorneys must comply with the mandatory disclosure requirements of 11 U.S.C. §329 and Fed. R. Bankr. P. 2016(b) to receive compensation. "Section 329 of the Bankruptcy Code governs the debtor's transactions with attorneys. It requires that an attorney submit a statement of compensation to be paid to enable the court to determine if the fees are reasonable, for the court has an independent judicial responsibility to review the fees of professionals *sua sponte*, even in the absence of objections. See Tri-State Fin., LLC. v. Lovald, 525 F.3d 649, 655 (8th Cir. 2009), cert. denied 555 U.S. 1046, 129 S. Ct. 630, 172 L. Ed. 2d 610 (2008); In re Claudio, 459 B.R. 500, 512 (Bankr. D. Mass. 2011); In re First Software Corp., 79 B.R. 108, 111 (Bankr. D. Mass. 1987); In re LaFrance, 311 B.R. 1, 20-21 (Bankr. D. Ma. 2004) ('The court has an independent judicial responsibility to review the fees of professionals, even in the absence of an objection by a party in interest.')" In re Nales Perez, 506 B.R. 328, 331 (Bankr. D.P.R. 2014). The debtor's attorney's fees are subject to court review for reasonableness irrespective of whether the debtor is in agreement with the fee amount. See 11 U.S.C. §329(b); In re Bergae, 2014 Bankr. Lexis 1575, *7 (Bankr. C.D. Ill. 2014) referencing Matter of Geraci, 138 F. 3d 314, 318 (7th Cir. 1998); In re Brennan, 2013 Bankr. Lexis 3242, *14 (Bankr. C.D. Ill. 2013).

Section 330(a)(3) sets forth the standards for the determination of reasonable compensation for professionals under any chapter by providing the following:

> "In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or paraprofessional person, the court shall consider the nature, the extent and the value of such services, taking into account all relevant factors, including—
>
>> (A) the time spent on such services;
>> (B) the rates charged for such services;
>> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy filed; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. §330(a)(3).

Section 330(a)(4)(B) provides the following in particular for Chapter 12 and Chapter 13 cases:

"In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. §330(a)(4)(B).

Section 330(a)(4)(B) is an exception to the general rule that the professionals' services are compensable to the extent that there is a benefit to the estate. In a Chapter 12 or Chapter 13 case in which the debtor is an individual, the debtor's attorney may receive reasonable compensation for representing the interests of the debtor that are related to the bankruptcy case. See Allan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 330.03[1][b][v] (16th ed. 2014).

The applicant has the burden of proof to establish an entitlement to the requested fees. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); Garb v. Marshall (In re Narragansett Clothing Co.), 210 B.R. 493, 498 (B.A.P. 1st Cir. 1997). Generally, the attorneys' fees are calculated using the lodestar approach which consists in "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." To compute the number of hours productively spent time spent on unnecessary, duplicative or overworked tasks are discounted. In re Berliner v. Pappalardo (In re Sullivan), 674 F. 3d 65, 69 (1st Cir. 2012) citing Torres- Rivera v. O'Neill- Cancel, 524 F. 3d 331, 336 (1st Cir. 2008). See also; In re Narragansett Clothing Co., 210 B.R. at 497 citing Boston & Maine Corp. v. Moore, 776 F. 2d 2, 6-7 (1st Cir. 1985); Furtado v. Bishop, 635 F. 2d 915, 920 (1st Cir. 1980); In re Bank of New England Corp., 142 B.R. 584, 586 (D. Mass. 1992)("The lodestar approach is the standard applied by courts in the First Circuit when reviewing applications for compensation").

"Courts first develop a point of reference by determining a reasonable billing rate and then multiplying it by the number of hours which appropriate tasks should have consumed." In re Claudio, 459 B.R. 500, 512 (Bankr. D. Mass. 2011) citing In re Narragansett Clothing Co., 210 B.R. 493, 497 (B.A.P. 1st Cir. 1997).  Besides taking into account the factors established pursuant to section 330(a)(3) to determine reasonable compensation, the following factors must also be considered under the loadstar method for the adjustment of attorneys' fees:

"(1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the attorney's services; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." In re Claudio, 459 B.R. 500, 512 citing Smuggler's Beach Properties, Inc., 149 B.R. 740, 743 (Bankr. D. Mass. 1993); In re First Software Corp., 79 B.R. 108, 112 (Bankr. D. Mass. 1987); See also; Johnson v. Georgia Highway Express, Inc., 488 F. 2d 714 (5th Cir. 1974).

However, in Chapter 13 cases, many courts have adopted the practice of establishing a flat fee for providing a bundle services that are generally required for the completion of consumer cases without requiring the filing of an itemized fee application for every Chapter 13 case. "Some courts have held that routine Chapter 13 cases need not use the loadstar method, but instead can apply a standard rate or flat fee based on the circumstances in a case." In re Becker, 469 B.R. 121, 123-124 (Bankr. M.D. Fla. 2012); See also; In re Howell, 226 B.R. at 281 (noting "Chapter 13 cases are standardized and systemized, and much of the work is capable of performance by paralegals. These cases are typically handled in high volume practices. Although counsel may lose a few dollars on one case when a standard, fixed fee is approved in a routine

-14-

case, counsel will make up those dollars in another case." "Typically, this method assumes that tasks common to all Chapter 13 cases will be covered by a standard fee promulgated in a local rule or guideline. Additional services relating to any unique complexities of the case are then measured through some variant of the lodestar methodology." See In re Caludio, 459 B.R. 500, 513 (Bankr. D. Mass. 2011).  The economics of a Chapter 13 practice require that debtor's counsel employ appropriate techniques to reduce the costs such as employment of paralegals, associate attorneys and secretarial (clerical) staff. See In re Claudio, 459 B.R. at 515.

This court has adopted a flat fee which is promulgated in P.R. LBR 2016-1(f), which provides that: "[t]he court may approve attorneys' fees in chapter 13 cases at the confirmation hearing without the debtor's attorney filing a detailed application if the fees, costs and expenses [excluding the filing fee] do not exceed $3,000." P.R. LBR 2016-1(f)(1). P.R. LBR 2016-1(f)(2)[3]

---

[3] P.R. LBR 2016-1(f)(2) provides: "When allowing the flat fee, in addition to the requirements of 11 U.S.C. §§526 and 527, counsel for the chapter 13 debtor should discharge the following responsibilities:

(A) Meet with the debtor to review the debtor's debts, assets, liabilities, income, and expenses.
(B) Explain which payments will be made directly by the debtor and which payments will be made through the debtor's chapter 13 plan, with particular attention to mortgage and vehicle loan payments, as well as any other claims that may accrue interest.
(C) Explain to the debtor how, when and where to make the chapter 13 plan payments.
(D) Explain to the debtor how the attorney's fees and trustee's fees are paid and provide an executed copy of this document to the debtor.
(E) Explain to the debtor that the first plan payment must be made to the trustee within 30 days of the date the plan is filed.
(F) Advise the debtor of the requirement to attend the §341 Meeting of Creditors, and instruct the debtor as to the date, time and place of meeting.
(G) Advise the debtor of the need to file any due tax returns prior to the §341 Meeting of Creditors.
(H) Advise the debtor of the necessity of maintaining liability, collision and comprehensive insurance on vehicles securing loans or leases.
(I) Timely prepare and file the debtor's petition, plan, statements and schedules.
(J) Appear at the §341 Meeting of Creditors with the debtor.
(K) Respond to objections to plan confirmation, and where necessary, prepare an amended plan.
(L) Prepare, file, and serve necessary amended statements to the plan which may include suspending, lowering, or increasing plan payments.
(M) Prepare, file, and serve necessary amended statements and schedules, in accordance with information provided by the debtor.
(N) Prepare, file, and serve necessary motions to sell real property when appropriate.
(O) Object to improper or invalid claims, if necessary, based upon documentation provided by the debtor.
(P) Represent the debtor in motions for relief from stay and motions to dismiss.
(Q) If appropriate, prepare, file, and serve necessary motions to avoid judicial liens on real or personal property.

-15-

establishes the responsibilities that counsel for the chapter 13 debtor must comply with under the flat fee. Attorneys who request fees greater than the flat fee established in P.R. LBR 2016-1(f)(1) for Chapter 13 cases must file an application for compensation which will be reviewed by the court pursuant to the factors established in section 330(a)(3) and the loadstar method to determine reasonable compensation. See In re Becker, 469 B.R. 121, 124 (Bankr. M.D. Fla. 2012); In re Bergae, 2014 Bankr. Lexis 1575, *8 (Bankr. C.D. Ill. 2014)("And because attorneys may still seek fees in amounts higher than the 'no-look' fee simply by filing an itemized request, the practice of setting a fair 'no-look' fee has generally been viewed as proper by courts and practitioners alike"). P.R. LBR 2016-1(f)(1) does not discourage the request for greater fee awards for Chapter 13 cases which are more complex and require greater time expenditure. Likewise, the local rule does not discourage the request for fee awards for Chapter 13 cases which are less than the flat fee for simple cases which require lesser time expenditure. See In re Bailey, 2009 Bankr. Lexis 4166, *12 (Bankr. E.D.N.Y. 2009) citing In re Thorn, 192 B.R. 52, 56 (Bankr. N.D.N. Y. 1984)("[W]hen the issues are not complex and the process is straightforward, an attorney is expected to exercise 'billing judgment' [citation omitted], and is encouraged to reduce its customary fees in appropriate circumstances to reflect a less substantial expenditure of the attorney's time"). The purpose of the flat fee is to promote judicial efficiency in managing the volume of Chapter 13 cases. Moreover, it also "aids bankruptcy courts in disposing of run-of-the-mill [C]hapter 13 fee applications expeditiously and uniformly, obviating the need for bankruptcy courts to make the same findings of fact regarding reasonable attorney time expenditures and rates in typical cases for each fee application that they review." In re Becker, 469 B.R. at 124 citing Cahill v. Walker & Patterson, P.C., 428 F. 3d at 541; See also In re Debtor's Attys. Fees in Chapter 13 Cases, 374 B.R. 903 (Bankr. M.D. Fla. 2007).

As to the first issue, which is whether the Applicant should be limited to the flat fee of $3,000 pursuant to P.R. LBR 2016-1(f)(1) because the services provided were within the services

---

(R) Provide such other legal services as are necessary for the administration of the present case before the bankruptcy court." P.R. LBR 2016-1(f)(2).

expected to be provided under the flat fee pursuant to P.R. LBR 2016-1(f)(2), the court concludes that debtors' attorneys in Chapter 13 cases are not required to adhere to the flat fee. Attorneys in Chapter 13 cases who opt to request fees that are in excess of $3,000, must file a detailed application of the fees, costs and expenses to enable the court to determine if such fees are reasonable, as the court has an independent judicial responsibility to review the fees of professionals, even in the absence of objections. The requirement of a detailed application of fees, costs and expenses is a safeguard or a control mechanism against excessive and unreasonable attorneys' fees.

Having determined that the Movant may file an application for fees in excess of the flat fee, the court will address the reasonableness of the compensation and, thus, will review the application for compensation in its entirety. The court will also consider the Trustee's arguments as to whether the compensation should be reduced due to the following: (i) the objected entries relate to charges for clerical or secretarial tasks which are being charged at the paralegal rate and thus, are not compensable; (ii) some entries involve services that are being charged at the attorney rate, but are more appropriate at the paralegal rate; (iii) lumping of services; (iv) vague description of services provided; and (v) excessive and duplicative entries. The court will not delve into the reasonableness of the billing rate for Debtors' counsel (senior and associate attorneys) or the paralegal staff since there was no argument regarding the same. Also, the billing rates for the senior and associate attorneys and for the paralegal staff in the application do not appear to be in an amount that would prompt the court to *sua sponte* review the same. Moreover, the court will not expand on whether or not the Applicant's written contract for services complies with 11 U.S.C. §§528, 527 and 526 as the same was not submitted or challenged. The court does note that the disclosures in the form identified as "Disclosure of Compensation of Attorney for Debtor(s)" does not clearly establish if the ultimate fee to be charged is the flat fee of $3,000 or a higher fee under the loadstar method. Thus, the "2016 Statement" in this case would not by itself, meet the requirements of 11 U.S.C. §528(a).

*Reasonableness of Compensation and Sufficiency of Description in Time Entries*

An application filed pursuant to Fed. R. Bankr. P. 2016(a) must abide by the standards set forth in section 330 for obtaining compensation for services rendered by a professional. Fed. R. Bankr. P. 2016(a) requires in pertinent part that, "an entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). Moreover, the application for compensation should clearly describe the services provided to the estate to enable the court to review the reasonableness of the compensation requested. Allan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 330.03[6] (16th ed. 2014). "Most courts find entries such as "telephone call" or "meeting" unacceptable without further description." Id.  "Billing records must clearly identify each billed discrete task, indicate the date the task was performed, the precise amount of time spent, not to be billed in increments greater than one-tenth of an hour, who performed the task, their level of experience, and that person's hourly rate." In re Bailey, 2009 Bankr. Lexis 4166, * 14 citing In re Fibermark, Inc., 349 B.R. 385, 395 (Bankr. D. Vt. 2006). "Moreover, the records must be detailed enough to enable the court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'" Id. citing Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct, 1933, 76 L. Ed. 2d 40 (1983).

This court in In re Hurricane Tech. Sys., 443 B.R. 575, 588 (Bankr. D.P.R. 2011) as part of its discussion of the reasonableness of compensation, stated the following regarding the sufficiency of the description of the services rendered in the application for compensation:

> "'The applications for compensation of the professional fees must be self-contained; in other words, they must be sufficiently detailed and accurate to place the court in a position to make an independent decision on the application.' Butler v. Indiano (In re Ponce Marine Farm, Inc.), 259 B.R. 484, 495 (D.P.R. 2001) citing In re Fruits Int'l Inc., 87 B.R. 769, 772 (Bankr. D.P.R. 1988)(quoting In re Matter of Perez Hernandez, 73 B.R. 329, 331 (Bankr. D.P.R. 1987); See In re Environmental Waste Control, 122 B.R. 341, 348 (Bankr. N.D. Ind. 1990) ("Entries need to be specific and identify what is being done, and what it concerns, or it will be reduced or denied"). Lumping a number of activities into a single entry does not allow the court to determine whether the time spent on a specific task was reasonable, thus courts do not fully compensate professionals that engage in lumping. See Allan N. Resnick & Henry J. Sommer, 3 Collier on

-18-

Bankruptcy ¶330.03[6](16th ed. 2010). If the applicant is requesting compensation for meetings, conferences, telephone calls and correspondence, the entry, 'should identify the participants, describe the subject matter of the communication and justify its necessity." In re Fruits Int'l. Inc., 87 B.R. at 773." In re Hurricane Tech. Sys., 443 B.R. at 588.

After perusing the docket of this case, the court finds that this particular Chapter 13 case is a typical or standard case that did not and does not present any complicated legal issues. This is the type of case in which the majority of the work is consumed in the compilation of information and the preparation of documents. See In re Szymczak, 246 B.R. 774, 782 (Bankr. D.N.J. 2000). The invoice for services rendered is dated July 1, 2014 and the last time entry pertaining to this period is dated June 27, 2014, which corresponds to docket entry No. 36. The invoice reflects a total of 38.10 hours for services rendered for this case as of June 27, 2014, of which 36.6 hours were billed because the initial consultation of 1.50 hour was at no charge. The 36.6 hours were distributed in the following manner: 12 hours at the attorney rate of $200; (ii) 3.1 hours at the associate rate of $175; (iii) 1.50 hour at the accountant rate of $100; and (iv) 20 hours at the paralegal rate of $85. The Debtors' bankruptcy petition, Chapter 13 plan and certificate of credit counselling were filed on March 14, 2014 for which the Movant rendered 11.2 hours in services and billed 9.7 hours because the initial consultation of 1.50 hours was at no charge. There is a remainder of 26.90 hours which were used in the following manner: preparing and attending the 341 creditor's meeting, attending the confirmation hearing, reviewing certificates of services and notices of appearances, reviewing the objection to debtor's claim of exceptions filed by the Trustee, reviewing the minutes of the 341 meeting, reviewing the Trustee's motion to dismiss and the five (5) unfavorable reports of recommendation, amending Schedules B and C, amending the Debtors' voluntary petition to correct postal address, drafting and filing a Response to Trustee's unfavorable recommendation and the opposition to the Trustee's motion to dismiss, meetings with client, and drafting letters to client,

-19-

uploading documents, drafting reports of pending matters.  The invoice reflects that as of June 27, 2014 (roughly three months after the case was filed), ten (10) letters were drafted to the client, and six (6) meetings were allegedly held with client after the filing of the bankruptcy petition mostly regarding pending matters and pending documents to file.  The total amount of hours seems to be unreasonable in light of the routine matters dealt with in the case.

The description in the time entries does not disclose that research or investigation was done regarding any particular legal issue. During the period that the invoice covers, no amended Chapter 13 plans were filed, there were no motions requesting relief from the automatic stay, the 341 meeting of creditors was held and closed on the same day.  There was an objection to the Debtors' claimed exemption which was unopposed and thus, the same was granted (Docket Nos. 16 & 19).  The pending matters[4] listed by the Trustee in the report of action taken at the meeting of creditors on April 16, 2014 were the basis for the Trustee's motion to dismiss (Docket No. 18) and for four (4) of the five (5) unfavorable reports on confirmation filed by the Trustee (Docket Nos. 21, 23, 24 and 35). In addition, both of the Debtors' Responses to the Trustee's Unfavorable Recommendation filed by Debtors on June 6, 2014 and June 30, 2014 (Docket Nos. 29[5] & 36[6]) consisted of informing the court that the Debtors had filed the pending documents and/or amendments noted by the Trustee at the 341 creditors' meeting.

---

[4] The pending matters listed in the report of action taken at the meeting of creditors by the Trustee were the following: (i) Debtors have to correct their postal address in the voluntary petition; (ii) joint Debtor to clarify her interest over the inheritance property since it does not match the Trustee's liquidation value analysis. Also, provide payoff balance in order to review liquidation value; (iii) pending to submit insurance quote to Reliable's collateral; (iv) joint Debtor does not receive Christmas bonus; (v) joint Debtor's income of 2nd half of January 2014 is missing; and (vi) Debtor's income was not submitted (6 months and 60 days) (Docket No. 17).

[5] On June 6, 2014 the Debtors filed their Response to Trustee's Unfavorable Recommendation which stated the following:
"TO THE HONORABLE BANKRUPTCY COURT:

COMES NOW the Debtors, and very respectfully state and pray as follows:

-20-

In summary, the court concludes that this is a standard case with no complex legal issues. The total number of hours billed is not reasonable under the specific facts of this case. This is the type of Chapter 13 case that lends itself to compensation under the flat fee provided in P.R. LBR

1. On March 14, 2014 Debtors filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code.
2. The Chapter 13 Trustee issued an Unfavorable Recommendation objecting to the confirmation of Debtors' Plan.
3. On today's date, the Debtors filed the following amendments requested by the Chapter 13 Trustee:
   a. Amended Voluntary Petition.
   b. Amended Schedule B
   c. Amended Schedule C.

4. Also on today's date, the Debtors submitted the following documents to the Chapter 13 Trustee via upload to the Trustee's TEDFA system:
   a. Quote
   b. Payoff Balance of Inheritance
   c. Liquidation Value of Inheritance
   d. Joint Debtor's income.

5. With the aforestated filings and uploads, the Debtors have fully complied with all of the Trustee's request.
6. Therefore, the Debtors respectfully submit that this case is ready for Confirmation.

   WHEREFORE, it is respectfully prayed for this Honorable Court to take notice of the above and approve debtor(s) plan." (Docket No. 29).

[6] On June 30, 2014 the Debtors filed their Response to Trustee's Unfavorable Recommendation which stated the following:
   "TO THE HONORABLE BANKRUPTCY COURT:

   COMES NOW the Debtors, and very respectfully state and pray as follows:

1. On March 14, 2014 Debtors filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code.
2. The Chapter 13 Trustee issued an Unfavorable Recommendation objecting to the confirmation of Debtors' Plan.
3. On today's date, the Debtors submitted the following documents to the Chapter 13 Trustee via upload to the Trustee's TEDFA system:

   a. Evidence of Debtor's income from December 2013 to March 2014.
   b. Evidence of Joint Debtor's income of second half of January.

4. With the aforestated uploads, the Debtors have fully complied with all of the Trustee's request.
5. Therefore, the Debtors respectfully submit that this case is ready for Confirmation.

   WHEREFORE, it is respectfully prayed from this Honorable Court to take notice of the above and approve debtors plan." (Docket No. 36).

-21-

2016-1(f). The court's analysis and explanation of the fee award does not have to be as detailed to the extent that it provides a line by line explanation of the application for compensation in its entirety, rather the explanation needs to be detailed enough so that the reviewing court is in a position to understand the trial court's rationale for a particular fee award. See In re Sullivan, 674 F. 3d at 71 ("There is no requirement that a bankruptcy court, in explaining a fee award, be precise to the point of pedantry. Instead, the explanation need only be sufficiently detailed to allow a reviewing court to ascertain the trial's court's thought processes and glean the basis for its award"). In the instant case, the Trustee's alternate argument consisted in objecting to a number of entries mainly because certain services rendered were part of the Applicant's overhead expenses and other services rendered should have been billed at a paralegal rate rather than at the attorney billing rate. Thus, the court has reviewed the Movant's application for compensation in its entirety and considered the Trustee's objections to a number of entries to provide an adequate basis (explanation) for the fee award.

The court finds that many of the time entries in this case lack detail and specificity. The court will not compensate the Applicant for the following time entries which amount to $680.50 for 7.6 hours regarding "pending matters". The majority of these entries are vague and simply list the description of pending matters in the case or pending documents as the professional service rendered. The court will not compensate the Movant for the following entries which are vague and unspecific:

| Date | Rate | Time | Amount | Description of service |
|------|------|------|--------|------------------------|
| 03/10/2014 | $85 | .20 | $17.00 | Telephone conference with client re pending matters. |

| 04/23/2014 | $85 | 1.00 | $85.00 | Meeting with client regarding pending information and documents. |
|---|---|---|---|---|
| 04/24/2014 | $200 | .30 | $60.00 | Letter to client re pending matters. |
| 05/08/2014 | $85 | .80 | $68.00 | Review and organization of pending matters in case. Drafting report of pending matters. |
| 05/12/2014 | $85 | .30 | $25.50 | Letter to client re: regarding pending matters |
| 05/13/2014 | $85 | .50 | $42.50 | Review and organization of pending matters in case. |
| 05/16/2014 | $85 | .50 | $42.50 | Review and organization of pending matters in case (.40) confirm assistance to office meeting and discussed pending matters (.10). |
| 05/19/2014 | $85 | .20 | $17.00 | Preparing letter to client re pending matters in case. |
| 05/21/2014 | $85 | .30 | $25.50 | Letter to client re pending matters in case. |
| 06/02/2014 | $85 | 1.00 | $85.00 | Meeting with client regarding: pending documents for filing. Filing same. |
| 06/06/2014 | $85 | 1.00 | $85.00 | Meeting with client regarding: pending documents for filing. Filing same. |
| 06/20/2014 | $85 | .50 | $42.50 | Meeting with client regarding: review and analysis of pending matters in case. |
| 06/27/2014 | $85 | 1.00 | $85.00 | Review and analysis of pending matters in case. Preparing draft of: Response Unfavorable Recommendation for attorney review. Receiving and reviewing documents. |

The court further finds that the entry dated June 6, 2014 lumps various services together without a breakdown of the time expended for each service performed. The description of the entry is as follows: "Review of case file (.20). Conducting case analysis (.30). Review draft of and further drafting the following documents: Amended Voluntary Petition, Amended Schedule B, C, Motions to Amend, Response to Trustee's Unfavorable Report, and Opposition to Motion to Dismiss (1.50)." The court notes that a time entry dated May 17, 2014 also includes the same services rendered as the June 6, 2014 entry such as preparing a draft of the amended bankruptcy documents and of the opposition to motion. The description of the May 17, 2014 time entry is as follows: "Meeting with client regarding case information. Further receiving and reviewing documents from client (.30). Organizing same (.20). Conducting additional client interview for preparation of bankruptcy documents (.10). Preparation of draft of Amended bankruptcy documents, and of Opposition to Motion (.40)." The court further notes that the amendments to the amended voluntary petition, Schedule B and C were minimal. The drafts of these amendments and a draft of the opposition to the motion were prepared by a paralegal on May 17, 2014. The voluntary petition was amended to correct the Debtors' postal address[7] (Docket No. 34). The amendment to Schedule B[8] (Docket No. 27) was to clarify the interest over the

---

[7] The Debtors' *Motion Submitting Amended Voluntary Petition, Notice and Certificate of Service* reads as follows:

"TO THE HONORABLE COURT:

COMES NOW Debtors represented by the undersigned attorney, and respectfully state and pray as follow:

1. Debtors through this motion submits the amended voluntary petition in order to correct postal address.

WHEREFORE, Debtors respectfully prays for this Honorable Court to take notice of the above." (Docket No. 34).

[8] The Debtors' *Motion to Inform Amendment to Schedule B and Certificate of Service* reads as follows:

inheritance property and the amendment to Schedule C[9] was to amend an exemption pursuant to 11 U.S.C. §522(d)(1). Moreover, the opposition to the motion to dismiss[10] merely states that the

---

"TO THE HONORABLE COURT:

COMES NOW Debtors represented by the undersigned attorney, and respectfully state and pray as follow:

1. On today's date Debtors are filing an Amended Schedule B, with the purpose of clarify interest overt the inheritance property.

2. Such Amended Schedule was accompanied by a Declaration Under Penalty of Perjury signed by Debtors verifying the information contained in the amended schedule. Also, the Amended Schedule was notified through CM/ECF to all CM/ECF participants, including the US Trustee and the Chapter 13 Trustee.

WHEREFORE, Debtors hereby pray for this Honorable Court to take notice of the above." (Docket No. 27).

[9] The Debtors' *Motion to Inform Amendment to Schedule C and Certificate of Service* reads as follows:

"TO THE HONORABLE COURT:

COMES NOW Debtors represented by the undersigned attorney, and respectfully state and pray as follow:

3. On today's date Debtors are filing an Amended Schedule C, with the purpose of amended exemption 11 U.S.C. §522(d)(1).

4. Such Amended Schedule, and the present motion, were notified through CM/ECF to all CM/ECF participants, including the US Trustee and the Chapter 13 Trustee, and was served via regular US Mail to all other creditors and parties in interest at the mailing addresses listed below.

WHEREFORE, Debtors hereby pray for this Honorable Court to take notice of the above." (Docket No. 28).

[10] The Debtors' *Opposition to Trustee's Motion to Dismiss* stated as follows:

"TO THE HONORABLE COURT:

COMES NOW Debtors, through the undersigned counsel, and very respectfully pray as follows:

1. On March 14, 2014 Debtors filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code.

2. On May 5, 2014 Chapter 13 Trustee filed a "Motion to Dismiss" alleging failure to comply with the Bankruptcy Code. (Docket entry no. 18).

3. On June 6, 2014, Debtors filed the following amendments and submitted documents requested by the Chapter 13 Trustee. Debtors took care of all pending matters. Therefore, it is respectfully requested that the Motion to Dismiss be denied.

amendments and documents requested by the Trustee have been filed and that the Debtors took care of all pending matters (Docket No. 30). The Court will reduce the June 6, 2014 time entry to a total of 1.00 hour, .50 hour for the two (2) tasks that were itemized and .50 hour for the lumped services that were also accounted for in the May 17, 2014 time entry. This particular entry is reduced to $200.00.

*Paraprofessional Services and Clerical/Secretarial Work*

Section 330(a)(1)(A) specifically provides for reasonable compensation for actual, necessary services rendered by paraprofessionals. Paralegals and law clerks are considered paraprofessionals.[11] This particular provision was included as a measure to decrease the cost of administering bankruptcy cases. See Allan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 330.03[16][d] (16th ed. 2014). The American Bar Association Standing Committee on Legal Assistants defines legal assistant/ paralegal as follows: "[a] legal assistant or paralegal is a person, qualified by education, training or work experience who is employed or retained by a lawyer, law office, corporation, governmental agency or other entity and who performs specifically delegated substantive legal work for which a lawyer is responsible." www. Americanbar.org/groups/paralegals/resources/current_aba_definition_of_legal_assistant_paraleg al.html. The services a paraprofessional provides have been described as those that, "represent a shift of tasks ordinarily performed by a lawyer or other professional, and the service is reasonable and necessary, the service is compensable. If clerical or secretarial services shift to the paraprofessional, the service is overhead and not a reasonable charge to the estate." In re

---

WHEREFORE, it is respectfully prayed from this Honorable Court to enter an Order denying the Motion to Dismiss." (Docket No. 30).

[11] In In re CF & I Fabricators, 131 B.R. 474, fn. 8 (Bankr. D. Utah 1991) paraprofessionals were defined as: "…those associated with and who substantively assist professionals such as lawyers, accountants, auctioneers, and appraisers and are intimately involved in the estate's administration. Paraprofessionals include law clerks, paralegals, legal assistants, and estate administrators or managers."

-26-

CF&I Fabricators, 131 B.R. 474, 489 (Bankr. D. Utah 1991). Clerical (secretarial) work is not compensable because it is considered as part of the overhead expenses incurred by a professional, and as such it is factored in the hourly rate of the professional. See In re C.P. Del Caribe, Inc., 143 B.R. 11, 17 (Bankr. D.P.R. 1992) ("As a general rule courts have viewed clerical work as part of the overhead expenses incurred by a professional, and because it is an expense which is built in the hourly rate of the professional is non-compensable"). Paralegals perform substantive legal work that would otherwise be done by the attorney as long as they are supervised by an attorney. Paralegals engage in factual investigation and research, legal research and the preparation of legal documents under appropriate lawyer supervision. Lawyers are responsible for the work product and actions of the nonlawyers they employ pursuant to ABA Model Rule 5.3[12] of Professional Conduct. The *ABA Model Guidelines for the Utilization of Paralegal Services* establish the ground rules for the use of services provided by paralegals. In In re CF&I Fabricators, 131 B.R. at 489-490, the court determined that to differentiate which services were clerical or paralegal in nature, "…the court can look at the kind of services that are traditionally charged to overhead, the amount of discretion allowed to the paraprofessional, the experience or education required to accomplish the assignment, the responsibility delegated to

---

[12] ABA Model Rule 5.3 of Professional Conduct provides: "With respect to a nonlawyer employed or retained by or associated with a lawyer:

    (a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

    (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

    (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

        1. the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

        2. the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action."

the paraprofessional and the amount of supervision retained by the professional." The court in In re CF&I Fabricators, 131 B.R. at 492, also defined clerical or secretarial tasks as follows: "[i]f the service performed by a paraprofessional consists of typing, data entry, checking court dockets or court dates, manually assembling, collating, marking, processing, photocopying, or mailing documents, the task is clerical in nature and not compensable. Such tasks are traditionally charged to overhead and included in the professional's hourly rate. Ginji, 117 Bankr at 995; In re Nashville Union Stockyard Restaurant Co., Inc., 54 Bankr. 391, 396 (Bankr. M.D. Tenn. 1985). If no singular education or experience is required, if the service requires extensive supervision by the professional, or if there is no discretion involved, the service is not specifically compensable." In In re Bergae, 2014 Bankr. Lexis 1575, *20 (Bankr. C.D. Ill. 2014) the court emphasized the importance of the paralegal's education and experience for the legal work to be compensable ("Even if the work is, in fact, clearly legal in nature, the work is not compensable under §330 unless the person rendering the services has sufficient knowledge and expertise to perform substantive legal work. Therefore, the time spent by general clerical staff advising clients, drafting documents, and the like is not compensable under §330").

There are courts that require the fee applications requesting compensation for paraprofessionals' work to disclose the paraprofessionals' experience and qualifications to justify the paraprofessional's hourly rate. See In re CF&I Fabricators, 131 B.R. at 493 citing In re Carter, 101 Bankr. 170, 175 (Bankr. D.S.D. 1989)(the qualifications "should be established to justify the charge"); See also; In re Brennan, 2013 Bankr. Lexis 3242, * 23 ("The information contained in the Application simply does not support a finding that any of the legal assistants are qualified paraprofessionals"); In re Bergae, 2014 Bankr. Lexis 1575, *20 ("When an applicant for professional fees seeks compensation for a paraprofessional's work, the paraprofessional's experience and qualifications must be stated"). This court does not require attorneys to disclose

the paraprofessionals' work experience and qualifications when requesting applications for compensation under any chapter of the Bankruptcy Code pursuant to Fed. R. Bankr. P. 2016, P.R. LBR 2016-1 or when requesting application for employment under Fed. R. Bankr. P. 2014 and P.R. LBR 2014-1.

The Movant's arguments regarding the case of In re C.P. Del Caribe, Inc., are contradictory. Movant states that this court in the case of In re C.P. Del Caribe, Inc., held that that for accounting firms, clerical work is compensable because it is not factored into the hourly rate billed by the accountant. The practice amongst accounting firms at the time was that the work performed by the clerical staff was billed separately. This is not the case for attorneys, given that the overhead expenses (clerical/secretarial work) are factored into the attorneys' billable rate. Applicant transposes the argument applicable to accounting firms for excluding overhead expenses to the services provided by paralegals in law firms. The Movant's arguments are misplaced. The court in In re C.P. Del Caribe Inc., was unable to ascertain the reasonableness of the clerical services provided by the support personnel of the accounting firm due to the failure to provide the description of the services provided. The court concluded that it could award compensation for clerical services to an accounting firm because the prevalent practice was that they were not included in the accountant's billing rate. This is not the case for attorneys' hourly rate which factors in overhead expenses that are secretarial and clerical in nature. The paralegal expenses are billed separately and must provide a description of the services provided to determine whether the same are reasonable and require legal work or analysis.

After carefully analyzing the Movant's invoice this court finds that certain entries are clerical in nature and thus, are not compensable. The court finds that drafting informative letters to clients to inform them of case filings, hearing dates, a creditor's address are not substantive

legal work. Thus, the court disallows 1.90 hour which amounts to $253.50. The following entries are clerical in nature:

| Date | Rate | Time | Amount | Description |
|---|---|---|---|---|
| 03/19/2014 | $200 | .50 | $100.00 | Letter to client re case filing and hearing dates |
| 04/07/2014 | $200 | .30 | $60.00 | Letter to client re: creditor's address. |
| 05/07/2014 | $85 | .30 | $25.50 | Letter to client re: Motion to Dismiss |
| 05/13/2014 | $85 | .30 | $25.50 | Letter to client re: Motion to Dismiss filed |
| 05/14/2014 | $85 | .30 | $25.50 | Letter to client re: hearing date. |
| 06/16/2014 | $85 | .20 | $17.00 | Letter to client re: Reschedule hearing. |

The court further finds that receiving and reviewing certificates of service and notices of appearance, identifying and uploading documents to the Trustee, checking the docket, mailing letters, organizing files, and updating files are tasks that do not constitute substantive legal work. The court disallows 3.80 hours which amounts to $530.00. The following entries are clerical in nature:

| Date | Rate | Time | Amount | Description |
|---|---|---|---|---|

-30-

| | | | | |
|---|---|---|---|---|
| 03/14/2014 | $85 | .50 | $42.50 | Filing case and organizing file. |
| 03/15/2014 | $200 | .30 | $60.00 | Receiving, reviewing, and scheduling notice of first meeting of creditors & notice of appointment. |
| 03/18/2014 | $200 | .20 | $40.00 | Receiving and reviewing notice of appearance. |
| 03/20/2014 | $200 | .20 | $40.00 | Receiving and reviewing various certificates of service. |
| 03/27/2014 | $200 | .10 | $20.00 | Receiving and reviewing certificate of service. |
| 03/28/14 | $85 | .60 | $51.00 | Identifying documents for uploads to Trustee. Uploading documents: various comparables and paystubs. |
| 04/03/14 | $200 | .20 | $40.00 | Receiving and reviewing notice of appearance. |
| 04/04/2014 | $200 | .20 | $40.00 | Receiving and reviewing notice of appearance. |
| 05/08/2014 | $200 | .20 | $40.00 | Receiving and reviewing certificate of service. |
| 05/09/2014 | $85 | .20 | $17.00 | Identifying documents for uploads to Trustee. Uploading documents: quotation for car insurance. |
| 05/13/2014 | $200 | .20 | $40.00 | Receiving and reviewing notice of appearance. |
| 05/14/2014 | $85 | .10 | $8.50 | Mailing letter re upcoming hearing. |

| 05/17/2014 | $85 | .20 | $17.00 | Identifying documents for uploads to Trustee. Uploading documents: paystubs. |
| 06/06/2014 | $85 | .40 | $34.00 | Uploading documents to Trustee: payoff balance and liquidation value. |
| 06/16/2014 | $200 | .20 | $40.00 | Receiving and reviewing certificate of service. |

In the instant case, the total hours reduced are 14.30 hours of which 3.90 hours were at the attorney rate of $200 and 10.40 hours were at the rate of $85.00. Thus, for the reasons stated herein the invoice has been reduced by $1,664, which leaves a balance of $3,128.50 not taking into account the $200 that the Debtors paid pre-petition.

Conclusion

For the reasons elucidated above, the court con finds that debtors' attorneys in Chapter 13 cases are not obligated to adhere to the flat fee. If such is the case, then the attorney must file an application for compensation which will be reviewed by the court pursuant to the factors established in section 330(a)(3) and the loadstar method to determine reasonable compensation. Counsel for consumer Chapter 13 debtors should promote judicial efficiency by filing applications under the flat fee in standard Chapter 13 cases. The court is conscious that business Chapter 13 cases may, and generally do, require an application under the loadstar method.

-32-

After a careful examination of the application for compensation, this court further finds that the Movant should be compensated in the total amount of $3,128.50. Consequently, the court awards an additional $128.50 to the $3,000.00 attorney's fees awarded at the August 27, 2014 confirmation hearing and included in that confirmation order entered on the same date.

SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of February, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge

-33-